UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 11-21569-MSH |
| **DEBRA L. GORSKY,** | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON DEBTOR'S MOTION TO
AMEND SCHEDULES**

The debtor, Debra L. Gorsky, filed a voluntary chapter 13 petition on December 13, 2011. Her case was converted to chapter 7 on January 12, 2012. On March 20, 2012, her chapter 7 trustee filed a Report of No Distribution signaling that hers was a so-called "no asset case," meaning creditors would be receiving nothing as a result of Ms. Gorsky's bankruptcy filing. On April 10, 2012, the court entered an order discharging Ms. Gorsky from her dischargeable debts, and on April 23, 2012, her case was closed.

Six years later, on March 12, 2018, Ms. Gorsky moved to reopen her case in order to file a motion to amend her schedules of liabilities to add as a creditor Harry T. Daniels, who was suing her in state court.[1]  Mr. Daniels opposed the motion to reopen. After a hearing, I entered an order on March 27, 2018, granting the motion to reopen but denying Ms. Gorsky's oral motion to stay the state court action being prosecuted by Mr. Daniels which had been pending since October of 2015 because the state court action was ready for final disposition.

---

[1] This was her second motion to reopen. On January 25, 2013, the court allowed Ms. Gorsky's motion to reopen her case for the purpose of seeking to avoid various judicial liens on her property. Upon completion of that process, on March 14, 2013, the case was closed.

1

On February 7, 2019, judgment entered in the state court action in favor of Mr. Daniels and against Ms. Gorsky in the amount of $107,000, plus interest and costs. On April 1, 2019, Ms. Gorsky filed a motion in this case to amend her schedules to add Mr. Daniels as a creditor holding an undisputed claim against her in the amount of $107,000. Mr. Daniels opposed the motion.

In his state court complaint, Mr. Daniels asserted claims against Ms. Gorsky arising from a $250,000 loan or investment made by Mr. Daniels in favor of Ms. Gorsky's husband in 2005. Mr. Gorsky's conduct in connection with that transaction was determined in a separate lawsuit to have constituted fraud and embezzlement. In his suit against Ms. Gorsky, Mr. Daniels claimed she directly benefited from the $250,000 Mr. Gorsky had embezzled from him. Mr. Daniels sought judgment against Ms. Gorsky for $250,000 on theories of imputed fraud and embezzlement and unjust enrichment. Ms. Gorsky initially defended on the merits. A year after Mr. Daniels' complaint was filed, Ms. Gorsky moved to amend her answer to assert the affirmative defense of her bankruptcy discharge. The motion to amend was allowed over Mr. Daniels' objection. By the time Ms. Gorsky filed her motion to reopen this case on March 12, 2018, this state court action was ready for trial. I concluded that it was in the best interests of all concerned to permit the state court litigation to proceed to completion before considering whether Mr. Daniels should be added as a creditor in this case. Once the parties received a ruling by the state court, they could return to this court with a preclusive judgment as to whether Ms. Gorsky owed money to Mr. Daniels, how much and whether the debt arose from fraud or embezzlement. As it turned out, Mr. Daniels obtained his $107,000 judgment against Ms. Gorsky on the basis of unjust enrichment, not fraud or embezzlement.

On June 26, 2019, I conducted an evidentiary hearing on Ms. Gorsky's motion to amend her schedules. The purpose of the hearing was to allow the parties to present evidence on whether Ms. Gorsky's failure to schedule Mr. Daniels as a creditor at the inception of her bankruptcy case in 2011 or to seek to add him as a creditor at any time prior to her March 12, 2018 motion to reopen her bankruptcy case, was an innocent omission and, even if it was, whether equitable considerations nevertheless justified denying Ms. Gorsky's motion to amend her schedules. Having concluded the evidentiary hearing, I hereby set forth my findings of fact and rulings of law.

The dual standards of innocent omission and equity, scrutinized at the evidentiary hearing, were established in 2009 by the United States Court of Appeals for the First Circuit in *Colonial Surety Co. v. Weizman*, 564 F.3d 526, 532 (1st Cir. 2009), as governing a bankruptcy court's determination of whether to permit the reopening of a bankruptcy case to add an unscheduled creditor. This matters because under Bankruptcy Code § 523(a)(3),[2] subject to certain exceptions not applicable here, the debt of a creditor who is not scheduled is unaffected by a debtor's discharge in bankruptcy.[3]

When Ms. Gorsky filed her bankruptcy petition and supporting schedules of assets and liabilities in December of 2011, she did not list Mr. Daniels as a creditor. Mr. Daniels knew nothing of Ms. Gorsky's bankruptcy until October of 2016, when Ms. Gorsky's state court attorney, Louis Cassis, filed a motion to amend Ms. Gorsky's answer to assert her bankruptcy discharge as a defense to Mr. Daniels' complaint.

---

[2] All references to the Bankruptcy Code or Code are to 11 U.S.C. § 101 *et seq*.
[3] While *Weizman* addressed motions to reopen to add a creditor and here I am presented with a motion to add a creditor (as Ms. Gorsky's case already has been reopened), I find the *Weizman* standards apply with equal force.

Ms. Gorsky's failure to include Mr. Daniels as a creditor in her schedules at the inception of her bankruptcy case in 2011 was an innocent omission. I find from the evidence presented that Ms. Gorsky did not realize that Mr. Daniels had claims against her until she was served with Mr. Daniels' state court complaint in October or November of 2015.

Once Ms. Gorsky learned of Mr. Daniels' claims, however, she chose not to inform her attorney, Mr. Cassis, about her prior bankruptcy until mentioning it to him in passing during preparation for her deposition by Mr. Daniels in August of 2016, some ten months after she received notice of Mr. Daniels' claims. Then, Mr. Cassis sat on the information for another two months, until October of 2016, when he filed a motion in state court (which was allowed over Mr. Daniels' objection) to amend Ms. Gorsky's answer to assert her bankruptcy discharge as an affirmative defense. Then Ms. Gorsky and Mr. Cassis waited at least a year before Ms. Gorsky, on Mr. Cassis's advice, hired bankruptcy counsel who in March of 2018 filed the motion to reopen this case to add Mr. Daniels as a creditor.

Ms. Gorsky's motion to reopen was precipitated by the state court's denying her motion for summary judgment on November 29, 2017. In his memorandum of decision, Judge Pasquale ruled that under applicable federal law, Ms. Gorsky's prior bankruptcy discharge was not a defense to Mr. Daniels' claims because he was not listed as a creditor in the bankruptcy case and that under Bankruptcy Code § 523(a)(3) his debt had not been discharged. In his analysis, Judge Pasquale pointed to the misplaced reliance by Mr. Cassis on a line of federal cases holding that Code § 523(a)(3) did not apply in a no-asset chapter 7 case such as Ms. Gorsky's, and so even unscheduled debts could be discharged. In his ruling, Judge Pasquale noted the inapplicability of those cases in the First Circuit in light of the *Weizman* decision which established that § 523(a)(3) applies to unscheduled debts even in no-asset cases. Judge Pasquale recommended that

4

if Ms. Gorsky wanted to discharge her debt to Mr. Daniels, the proper course would be to seek appropriate relief in the bankruptcy court.

At the evidentiary hearing before me, Ms. Gorsky and Mr. Cassis both testified as to why there had been a nearly two-and-a-half year delay from the time Ms. Gorsky learned of Mr. Daniels' claim until the time she moved to reopen her bankruptcy case. Ms. Gorsky claimed she had no idea her prior bankruptcy had anything to do with Mr. Daniels' claim so she didn't mention it to Mr. Cassis right away. Mr. Cassis testified that, while he was not a bankruptcy lawyer, once he learned of Ms. Gorsky's prior bankruptcy he "asked around" and after speaking to at least one attorney whose practice involved bankruptcy matters, reached the conclusion that is was unnecessary to seek to reopen Ms. Gorsky's bankruptcy case because under applicable law in a no-asset bankruptcy case such as hers an unscheduled debt was dischargeable. Then, when the state court denied Ms. Gorsky's motion for summary judgment and set Mr. Cassis straight on *Weizman* and the First Circuit's rejection of the cases relied upon by Mr. Cassis, he promptly referred Ms. Gorsky to a bankruptcy specialist who filed the motion to reopen her case.

I conclude that the nearly two-and-a-half year delay from the time Ms. Gorsky learned of Mr. Daniels' claims against her until she moved to reopen her bankruptcy case to try to do something about those claims, was not innocent or otherwise excusable under the *Weizman* standards. When Ms. Gorsky was sued by Mr. Daniels in state court, she concluded that his claims had nothing to do with her prior bankruptcy. In other words that Mr. Daniels' claims were not subject to her discharge. Without consulting her attorney to get his opinion on the matter she remained silent, allowing her attorney to defend the state court lawsuit on the merits until some nine months later when she mentioned her prior bankruptcy to him in passing. Ms. Gorsky's unilateral choice to proceed in state court based on her assumption that Mr. Daniels' claims

5

survived her bankruptcy, does not constitute an innocent or excusable act in the context of determining Ms. Gorsky's subsequent request to have Mr. Daniels' claims retroactively included in her bankruptcy discharge.

But even if I were to excuse Ms. Gorsky's conduct as a misguided but honest layperson's mistake, Mr. Cassis' decision to compound the delay in seeking to reopen Ms. Gorsky's bankruptcy case based on an incorrect application of the law cannot be as easily overlooked. The First Circuit has consistently held that clients are accountable for their counsel's acts and omissions. *See Davila–Alvarez v. Escuela de Medicina Universidad Central del Caribe*, 257 F.3d 58, 66-67 (1st Cir. 2001); *United States v. One Lot of $25,721.00 in Currency*, 938 F.2d 1417, 1422 (1st Cir. 1991). As one commentator has observed:

> A court can locate relevant opinions or review the record in a case as well as any attorney, but the *functioning* of the judicial process – not its result—depends on the lawyers being honest in their representations. It is neither expertise, nor just the use of judicial resources, but the role of the attorney as an honest advocate for the client that permits the system to operate with some degree of efficiency.

Peter J. Henning, *Lawyers, Truth, and Honesty in Representing Clients*, 20 Notre Dame J.L. Ethics & Pub. Pol'y 209, 243 (2006) (emphasis in original).

It has become an all too common occurrence these days for a lawyer who misses a deadline or bungles a pleading to request leniency from a harsh result, arguing that his innocent client should not be penalized for the lawyer's mistake. Were Ms. Gorsky the only victim of Ms. Cassis' misconstruing applicable law, leniency might be in order. Here, however, the fate of Mr. Daniels' claim is at stake and so the leniency threshold is considerably higher.

In *Weizman*, the First Circuit concluded that harm can travel in multiple directions and so when determining whether to grant relief to one party, a court must weigh the harm that such

relief may cause to another party. *Weizman*, 564 F.3d at 532. This is the second of the *Weizman* factors.

Mr. Daniels has offered two examples of harm to him that will result should Ms. Gorsky be permitted to amend her bankruptcy schedules at this late date to add Mr. Daniels as a creditor. First, Mr. Daniels testified that Ms. Gorsky's two-and-a-half year delay from the time he brought suit in state court until the time she moved to reopen her bankruptcy case cost Mr. Daniels some $21,000 in legal fees to prosecute the state court suit. This argument suggests that had Ms. Gorsky moved promptly to reopen her case to add Mr. Daniels as a creditor in the fall of 2015, Mr. Daniels would not have incurred those legal fees. I do not credit this argument because even if Ms. Gorsky's case had been reopened in 2015 and Mr. Daniels added as a creditor it would have been necessary for him to litigate somewhere to establish the amount of his claim and to determine its dischargeability. He would have incurred substantially similar legal fees.

I find Mr. Daniels' second claim of prejudice far more persuasive. Mr. Daniels asserts that by the passage of time he has been deprived of a fair opportunity to examine Ms. Gorsky at a creditors' meeting or in some other setting to inquire into her assets and transactions and whether she was entitled to receive a discharge under Bankruptcy Code § 727. Ms. Gorsky's testimony made it clear that she no longer is able to recall details concerning her and her husband's finances and transactions going back to 2011 and the years prior to her bankruptcy filing. In addition to the typical fading of memory with the passage of time, Ms. Gorsky testified quite emphatically that in the past year, her husband had suffered a serious stroke and she had lost her brother and her best friend, and as a result of the shock and stress of those occurrences she could remember very little, if anything, about her financial condition and transactions prior to those traumatic events.

7

In the typical Chapter 7 bankruptcy case, a debtor must appear and submit to an examination under oath at a meeting of creditors during the first 40 days or so of her case. Bankruptcy Code §§ 341 and 343; Fed. R. Bankr. P. 2003(a). The legislative history of § 343 indicates that the purpose of this examination "is to enable creditors and the trustee to determine if assets have improperly been disposed of or concealed or if there are grounds for objecting to discharge." H.R. Rep. No. 95-595, at 332 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6288; S. Rep. No. 95-989, at 43 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5829.

In light of Ms. Gorsky's self-confessed inability to recall much, if anything, about her finances in and around 2011, Mr. Daniels, whose debt Ms. Gorsky seeks to discharge now, will, for all practical purposes, be deprived of the opportunity to conduct a meaningful examination of Ms. Gorsky. This would be a highly prejudicial result, or, to invoke the *Weizman* standard, a result that would make it inequitable to grant the relief being sought by Ms. Gorsky.

In light of the foregoing, Ms. Gorsky has not met the requirements established by the First Circuit in *Weizman* and for that reason her motion to amend her schedules is denied. The

court will issue an order to show cause why this case should not be closed in light of the denial of Ms. Gorsky's motion to amend.

    It is so ORDERED.

Entered at Boston, Massachusetts this 17th day of September, 2019.

                                          By the Court,

                                          Melvin. S. Hoffman
                                          United States Bankruptcy Judge

Counsel Appearing:   Gary W. Cruickshank, Esq.
                           Boston, MA
                             for Debra L. Gorsky

                           Harry T. Daniels, Esq.,
                           Hingham, MA
                             pro se